**KP PERMANENT MAKE–UP, INC,
Plaintiff–Counter–Defendant–
Appellee,**

v.

**LASTING IMPRESSION I, INC; MCN
International Inc, Defendants–Coun-
ter–Claimants–Appellants,**

**Roes 1 Through 10, inclusive, Counter–
Defendant–Appellee.**

**No. 01–56055.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 9, 2002.

Filed April 30, 2003.

Charles C.H. Wu and C. William Kircher, Jr., Irvine, CA, for the defendants-counter-claimants-appellants.

Michael Machat, Beverly Hills, CA, for the plaintiff-counter-defendant-appellee.

Before: HUG, BRUNETTI, and O'SCANNLAIN, Circuit Judges.

## OPINION

HUG, Circuit Judge.

### I. Introduction

This case concerns the term "micro colors"[1] and who has the right to use it.

---

1. The parties use the term "micro color," "microcolor," and "micro colors" interchangeably. For purposes of this opinion, we will refer to the term as "micro color" or "micro colors." The minor difference in these terms has no significance in this action.

Lasting Impression I, Inc., owns an incontestable, registered trademark which consists of the term "micro colors," set in white, within a black box. It is the registration for this composite mark that is the basis of this litigation.

K.P. Permanent Make–Up, Inc. ("KP") uses the term "micro colors" on its products and brochures. Upon receiving a cease and desist letter from Lasting Impression I, Inc. in January 2000 demanding KP discontinue its use of the term "micro color," KP brought this action for declaratory relief against the defendants Lasting Impression I, Inc., and its distributor, MCN International, Inc. (hereinafter collectively referred to as "Lasting"). KP asserted that Lasting did not have the exclusive right to use the term "micro colors" and that the term was generic and incapable of receiving trademark protection. Lasting counterclaimed, alleging that KP's use of the term "micro color" infringed Lasting's incontestable, registered mark. The parties filed cross motions for summary judgment and summary adjudication.

The district court concluded that the term "micro colors" was generic, or if not generic, descriptive. The court then determined that KP was entitled to continue use of the term "micro color," in the manner that it had been since 1991, and that Lasting could continue to use its trademarked logo. Lasting appeals the district court's grant of summary judgment in favor of KP. We have jurisdiction under 28 U.S.C. § 1291.

## II. Factual and Procedural Background

KP and Lasting are direct competitors in the permanent makeup industry. To better understand the nature of the term "micro color," a brief description of permanent makeup and the permanent makeup industry is of use. Permanent makeup is similar to a tattoo, in that both are created by injecting pigment into the skin. Permanent makeup has both cosmetic and medical uses. For example, it may be used to create permanent eye liner and to enhance eyebrows, or it may be used in scar revision or in cases of pigmentary disorder. Permanent makeup is also known as micropigmentation.

The pigments used for permanent makeup are sold in small bottles for use by trained professionals. Both KP and Lasting have a separate line of pigments for use in the permanent makeup process. These pigments are sold in various colors. Further, both KP and Lasting sell their pigments to the same end users, such as beauty salons.

Lasting began using "micro colors" commercially as a trademark for its line of permanent makeup pigments in April 1992. The mark was registered on the Principal Register of the United States Patent and Trademark Office on May 11, 1993, as Reg. No. 1,769,592. The mark is registered as a design and word mark and consists of a solid black rectangle, with the words "micro" and "colors" in reverse white lettering. The word "micro" appears directly over the word "colors," and the two are separated by a green horizontal bar. In 1999, Lasting's mark, as registered, became incontestable. An illustration of the registered trademark is shown in Appendix A.

KP used the term "micro color" on its flyers beginning in 1990 and has continued to use the term on its pigment bottles since 1991. KP's use of the term "micro color" on its bottle labels consists of the word in full capitals before the actual color of the pigment in the bottle. For example, KP's use of the word on a bottle containing black pigment would appear as: "MICRO-COLOR: BLACK."

In 1999, KP adopted a new use of the term "micro color." Rather than using it only on its bottles, KP began using the term in its marketing brochures. The brochures display the term "micro color" in a stylized format. "Micro color" sits directly over the word "pigment," and a vial with pigment flowing out of it is depicted to the side of the word display.

Additionally, under both the vial and the phrase "micro color pigment" is the word "chart." Both the words "pigment" and "chart" appear in a smaller size type than the term "micro color," making the term the most dominant feature of the image. The brochure on which this image appears contains a chart displaying all the various colors in which KP's pigments are available. An illustration of the term in the marketing brochures is shown in Appendix B.

In March 2000, KP commenced this trademark declaratory relief action against Lasting. In response, Lasting counterclaimed, alleging that KP's use of the phrase "micro color" infringed Lasting's incontestable registration of its "micro colors" mark and sought damages for the infringement. Lasting's counterclaim also alleged unfair competition and false advertising.

KP filed a motion for summary judgment. KP's contentions consisted of the following: (1) Lasting's picture mark registration did not give Lasting the exclusive right to the term "micro color" separate from the logo; (2) the term "micro color" is generic; (3) KP can use "micro color" under the fair use doctrine; (4) the phrase has no secondary meaning; (5) Lasting has also used "micro color" in a generic sense and is estopped from arguing the term is not generic; (6) Lasting cannot show likelihood of confusion; and (7) KP's continuous prior use of the term "micro color" defeats Lasting's claim to exclusivity.

Lasting moved for summary adjudication of certain issues, principally that KP's contention that the term "micro colors" is generic had no merit, that KP's prior use contention had no merit, and that Lasting's registered trademark was not limited to the composite.

The district court granted KP's motion for summary judgment and denied Lasting's motion for summary adjudication. It held that KP could continue to use the term "micro color" in the manner it has since 1991 and that Lasting could continue to use its trademarked logo containing the words "micro color." Specifically, the district court concluded that the term "micro color" is generic, and, if not generic, descriptive. The district court then determined that neither party had acquired secondary meaning in the term "micro color." Finally, the district court held that KP's use was protected under the "fair use" defense, 15 U.S.C. § 1115(b)(4), and because its use was fair, the court declined to discuss KP's prior use contention or likelihood of confusion.

## III. Analysis

### A. Standard of Review

A grant of summary judgment is reviewed *de novo*. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257(9th Cir.2001). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.* "Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir.2002) (quotation marks and citations omitted).

## B. Trademark Infringement

In evaluating the parties' motions for summary judgment and summary adjudication, it is easiest to frame the relevant issues in the context of a trademark infringement action. KP's motion raises essentially issues that are defenses to an infringement action.

■ The Lanham Act allows the holder of a protectable trademark to hold liable any person who without consent, "use[s] in commerce any ... registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services" which is likely to cause confusion. 15 U.S.C. § 1114(1)(a). Before infringement can be shown, the trademark holder must demonstrate that it owns a valid mark, and thus a protectable interest. *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir.2002). Once the trademark holder shows that it has a protectable interest, the holder must show that the alleged infringer's use of the mark "is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a) & (b); *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 900 (9th Cir.2002). The alleged infringer has a number of defenses available.

■ Trademarks are generally divided into four categories: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful. The latter two categories are deemed inherently distinctive and are automatically entitled to protection because they naturally "serve[ ] to identify a particular source of a product...." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992).

■ Generic marks are not capable of receiving protection because they identify the product, rather than the product's source. *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). "Generic terms are not registerable, and a registered mark may be canceled at any time on the grounds that it has become generic." *Id.* Merely descriptive marks, which describe the qualities or characteristics of a product, may be registered only if the holder of the mark shows that the mark has acquired distinctiveness through secondary meaning. *Id.*

One advantage of registration on the Principal Register is that the mark may attain incontestable status. 5 McCarthy on Trademarks & Unfair Competition § 32:142 (2002). Incontestable status may be obtained by fulfilling the requirements of 15 U.S.C. § 1065. This requires that the registered mark has been in use for five consecutive years and is still in use in commerce. *Id.* In addition, the statute requires that there has been no decision adverse to the registrant's claim of ownership of the mark, the right to register, or the right to keep it on the register. *Id.* No incontestable right can be obtained in a mark which is the generic name for the goods or services. *Id.*

■ The incontestability provisions of the Lanham Act were designed to provide a means for a trademark holder to "quiet title in the ownership of his mark." *Park 'N Fly*, 469 U.S. at 198, 105 S.Ct. 658. However, although a mark may become incontestable, the label of "incontestability" is rather misdescriptive. 5 McCarthy § 32:147. An incontestable registration is still subject to certain defenses or defects, set forth in 15 U.S.C. § 1115 and as above stated does not apply to a mark that is generic.

The summary judgment entered for KP was based on the following determinations:

A. The words "micro color," as distinct from Lasting's entire logo, are not protected because the words are ge-

neric and thus cannot constitute a valid mark.

B. Even if those words are not generic, they are descriptive and have no secondary meaning and thus cannot constitute a valid mark.

C. The "fair use" defense is applicable to KP and precludes a claim of infringement.

Because the district court held that the entire logo with the words "micro color" on it was valid and protected but that the words "micro color" were not, our first inquiry is whether the words "micro color" themselves are protected by the registration of the mark or only the entire logo. We are aided in this inquiry by the sequence of events in the Ninth Circuit case of *Park 'N Fly v. Dollar Park & Fly, Inc.*, 718 F.2d 327(9th Cir.1983), *rev'd*, 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985).

### C. Protection Afforded to the Words "Micro Colors"

■ In *Park 'N Fly*, the mark at issue, which had attained incontestable status, consisted of the words "Park 'N Fly" and an airplane logo. The alleged infringer challenged the mark's validity arguing that the words "Park 'N Fly" were generic with respect to airport parking lots. *Id.* at 330. Park 'N Fly had a separate registration for the words "Park 'N Fly" without the airplane logo that was not yet incontestable. In addressing the issue of whether the words "Park 'N Fly" were generic, this court focused entirely on the words in the logo mark, which was incontestable, as opposed to words in the separate registration of the word mark.

Judge Kennedy (now Justice Kennedy), in writing for the court, held that because the most salient feature of the logo mark was the phrase "Park 'N Fly," any infringement of the word mark registration would also be an infringement of the logo mark. *Id.* at 331 n. 3. Thus, the opinion

concluded that the words "Park 'N Fly" were the most salient feature of the logo mark and that insufficient evidence had been presented to show the words were generic. *Id.*

It is significant that the United States Supreme Court, upon reviewing the Ninth Circuit's decision in *Park 'N Fly*, also recognized that Park 'N Fly had a separate registration for the words Park 'N Fly which had not become incontestable. However, it determined that such registration did not affect the resolution of the matter and focused on the incontestable logo mark in making its ruling. *Park 'N Fly*, 469 U.S. at 192 n. 2, 105 S.Ct. 658.

The Supreme Court reversed the Ninth Circuit's opinion on a different issue. The Ninth Circuit opinion had held that a registrant could not use the incontestability of its mark offensively to enjoin infringement and that a challenger could defend such an action on the grounds that the mark is merely descriptive. The Supreme Court reversed that aspect of the Ninth Circuit decision, but remanded for consideration the challenger's prior use defense and the defense that there was no likelihood of confusion.

The remand by the Supreme Court implicitly acknowledged that it was the words "Park 'N Fly" as the most salient feature of the logo trademark that were to be considered on remand. The Ninth Circuit on remand addressed the words of the logo trademark and affirmed the district court's finding that the challenger did not qualify for the prior use exception and that there was sufficient likelihood of confusion to justify an injunction in favor of Park 'N Fly. *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 782 F.2d 1508, 1509 (9th Cir. 1986).

It is clear under Ninth Circuit law, implicitly approved by the Supreme Court, that not only Lasting's logo mark itself is

protected by the registration, but also the words "micro color" as the most salient feature of the logo mark. In *Park 'N Fly* the words were held to be the most salient feature of a logo with an airplane; whereas in this case the words in white on a black background are virtually the only salient feature of the logo.

Because the words "micro color" are the most salient feature of the mark, those words are the focus of the inquiry on validity.

**D. Genericness**

KP contends that the words "micro color" are generic and thus not entitled to protection. To determine whether a term has become generic, we look to whether consumers understand the word to refer only to a particular producer's goods or whether the consumer understands the word to refer to the goods themselves. *Park 'N Fly*, 718 F.2d at 330. If the buyer understands the word to refer to the source of the good, the term is not generic. However, if the disputed term is "identified with all such goods or services, regardless of their suppliers, it is generic." *Id.* (quotation marks and citation omitted).

"Federal registration of a trademark endows it with a strong presumption of validity. The general presumption of validity resulting from federal registration includes the specific presumption that the trademark is not generic." *Coca–Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1254(9th Cir.1982) (citations omitted). This presumption of validity extends to the most salient feature of the mark, the words "micro color."

We recently discussed the nature of that presumption in *Tie Tech, Inc. v. Kinedyne*, 296 F.3d at 782–83. Citing the wording of 15 U.S.C. § 1115(a) we stated:

> Validity ... is a threshold issue. On this point, the plaintiff in an infringement action with a registered trademark

is given the prima facie or presumptive advantage on the issue of validity, thus shifting the burden of production to the defendant to prove otherwise.... Or, to put it as we did in *Vuitton [Et Fils S.A. v. J. Young Enters., Inc.*, 644 F.2d 769 (9th Cir.1981)], the defendant then bears the burden with respect to invalidity.

*Id.* at 783. In granting the summary judgment to KP, the district court erred in placing the burden on Lasting. The burden was on KP to produce sufficient evidence to overcome the presumption.

The question then becomes what evidence must be produced to overcome the presumption. We noted in *Tie Tech* at the summary judgment stage that all inferences from facts must be drawn most favorably to the non-moving party. *Id.* In evaluating the summary judgment awarded to KP, those inferences must be drawn in favor of Lasting, as the non-moving party. We stated in *Tie Tech*, after noting that this type of issue is generally viewed as an intensely factual issue, that if the challenger "can demonstrate through law, undisputed facts or a combination thereof that the mark is invalid the [trademark holder] cannot survive summary judgment." *Id.*

KP relied principally on an affidavit of the owner, Theresa Kim Plante, which stated: "There are various synonyms for microcolors, such as: micropigment, micro color pigments, micropigment colors and pigment colors. Both these terms micropigments and micro colors are abbreviations for micropigmentation colors. They all mean the same thing and are generic." Whether all of these terms could be synonyms for each other is highly doubtful. KP produced no evidence that consumers understood them to be synonyms. Both parties agree that the cosmetic process is "micropigmentation." That term alone

would no doubt be generic, however whether "micropigmentation colors" is generic is a different question. Plante's affidavit says it is generic and that "micro colors" is simply an abbreviation for that term, which she contends is generic. The affidavits of Story, McKinstry and Leung state that "pigment" is generally used to refer to the liquid injected into the skin as permanent makeup, whereas "color" refers to the hue or shade of the pigment. Thus, according to these affiants, the color or hue of the pigment has nothing to do with the generic process and therefore "micro colors" is not an abbreviation for a generic process.

The contention that "micropigmentation colors" is the generic term for the micropigmentation process and that "micro colors" is an abbreviation for that term and thus also generic is not one that reasonably minded jurors could accept. The words themselves do not support that contention, and KP introduced no evidence that the consumers so construed the words.

KP's other support for its generic argument was a statement that Story, the founder of Lasting, had made. KP contends that she used "micro colors" as a generic term in a brochure and an article. Story explained that neither reference was to "micro colors" as generic, and explained that in context the references were to the "Micro Colors" brand name and not intended as a generic term.

The first alleged generic use is in a brochure in which Lasting stated,

MICRO–COLORS# FC# pigment is the first and only MICRO–COLORS available by MCN. All other brands with similar or identical names are not associated with MCN. Due to the high demand for this superior quality pigment, many imposter pigments have been developed to create confusion in the marketplace. Make an informed purchasing decision: verify that MCN is the manufacturer before you buy. MICRO–COLORS is a federally registered trade name and trademark that is available only via MCN.

Rather than using the term in the generic sense, it is clear from the document itself that Lasting was distinguishing its mark from those who may have used MICRO–COLORS without authorization.

The second alleged generic use is in a trade article where Lasting discusses its product. In this article, Lasting states "all Lasting Impression I pigments (Micro–Colors) are six microns." From then on in the article, Lasting uses the term "Micro–Colors" (capitalized) instead of pigments in a general sense. Again, in context, it is clear that Lasting was not referring to "micro colors" in a generic sense. Rather Lasting had defined *its product* by its trademark "Micro–Colors" and uses that term to describe *its pigments* elsewhere in the article.

■ KP presented no evidence that "micro colors" was used or understood by consumers as a generic term rather than a brand name. Lasting did present evidence that "Micro Colors" is used and understood as a brand name not a generic term. We held in *Park 'N Fly* that "Without evidence that to the consuming public the primary significance of the term [Park 'N fly] is to denote the service Park 'N Fly offers and not its source, we are without a sufficient evidentiary basis to find Park 'N Fly's mark generic." *Park 'N Fly,* 718 F.2d at 330.

There is no genuine issue of material fact as to whether the salient part of Lasting's trademark, the words "micro colors," is generic. A reasonably minded jury could not conclude from the evidence produced that "micro colors" is a generic term. *See Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Based on the foregoing discussion of genericness, KP's motion for summary judgment cannot be upheld on this ground. Furthermore, Lasting's motion for summary adjudication on the issue of genericness should be granted.

## E. Descriptiveness

■ The district court also determined that the words "micro colors" were not protected because they were descriptive and Lasting had not acquired a secondary meaning in those words. A descriptive mark that has become incontestable is conclusively presumed to have acquired secondary meaning. *Entrepreneur Media*, 279 F.3d at 1142 n. 3. This means that a defendant in a trademark infringement action cannot assert that an incontestable mark is invalid because it is descriptive and lacks secondary meaning. *Park 'N Fly*, 469 U.S. at 205, 105 S.Ct. 658.

The district court recognized that Lasting's registered logo mark was incontestable. However, it held that the logo mark's incontestable status did not apply to the term "micro colors" because the registration was for the "micro colors" logo, and not merely the term.

■ We conclude that the district court erred in requiring that Lasting demonstrate secondary meaning in the term apart from the mark. As we have discussed, a registered mark may be infringed even if the exact mark is not being imitated and the challenger of an incontestable mark cannot assert that the most salient feature of the mark is descriptive and lacks secondary meaning. *See Park 'N Fly*, 469 U.S. at 192 n. 2, 205, 105 S.Ct. 658. Thus, when the holder of an incontestable mark is complaining that the most salient feature of its mark is being imitated and a likelihood of confusion may

result, the holder of the mark does not have to show that the salient feature, apart from the mark, has acquired secondary meaning. Rather, the conclusive presumption that the mark has acquired secondary meaning extends to the most salient feature of the mark. Thus, Lasting's incontestable registration is conclusive evidence that the mark is non-descriptive or has acquired secondary meaning, and there is no need to require a showing of secondary meaning in the term "micro colors" apart from the mark. Therefore, KP's motion for summary judgment cannot be upheld on this ground.

## F. The Fair Use Defense and Likelihood of Confusion

■ We next turn to the issues of fair use and likelihood of confusion. The district court granted KP's motion for summary judgment on the basis of fair use, under 15 U.S.C. § 1115(b)(4). It held it need not make a determination with respect to likelihood of confusion. Section 1115(b)(4) of the Lanham Act allows a fair use defense to the infringement of an incontestable mark providing:

> That the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, ... of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin....

As explained in *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1150 (9th Cir.2002), there are two types of fair use: classic fair use and nominative fair use. Classic fair use is that in which the alleged infringer "has used the[trademark holder's] mark *only* to describe his own product, *and not at all to describe the [trademark holder's] product.*" *Id.* at 1151 (emphasis in original). In contrast, nominative fair use occurs when the alleged infringer uses "the

[trademark holder's] mark to describe the [trademark holder's] product, *even if the [alleged infringer's] ultimate goal is to describe his own product.*" *Id.* (emphasis in original). Nominative fair use also occurs if the only practical way to refer to something is to use the trademarked term. *New Kids on the Block v. News Am. Publ'g, Inc.,* 971 F.2d 302, 308 (9th Cir. 1992) (explaining that nominative fair use may occur if one uses a trademark because it is the "only word reasonably available to describe a particular thing . . .").

■ The distinction between the two types of fair use is important because each type calls for a different analysis. When analyzing nominative fair use, it is not necessary to address likelihood of confusion because the nominative fair use analysis replaces the likelihood of confusion analysis. *Cairns,* 292 F.3d at 1151; *New Kids,* 971 F.2d at 308. To successfully assert the nominative fair use defense, the alleged infringer must show that: 1) the product in question is not readily identifiable without use of the trademark; 2) only so much of the mark is used as reasonably necessary to identify the product; and 3) the user of the mark did nothing that would suggest sponsorship by the trademark holder. *New Kids,* 971 F.2d at 308.

■ In contrast, when the classic fair use defense is raised, it is still necessary to analyze likelihood of confusion. *Cairns,* 292 F.3d at 1151. As expressed in *Cairns,* the fair use analysis "only *complements* the likelihood of customer confusion analysis." *Id.* at 1150; *see also Transgo, Inc. v. Ajac Transmission Parts Corp.,* 911 F.2d 363, 366 n. 2 (9th Cir.1990) (explaining that anyone is free to use a term in its primary, descriptive sense, as long as such use does not result in consumer confusion as to the source of the goods); *Lindy Pen Co. v. Bic Pen Corp.,* 725 F.2d 1240, 1248 (9th Cir. 1984) (explaining that the fair use defense

is not available if likelihood of confusion has been shown).

■ This is a case concerning the classic fair use defense. KP is using the term "micro color" to describe its own products, not that of Lasting. Therefore, KP can only benefit from the fair use defense if there is no likelihood of confusion between KP's use of the term "micro color" and Lasting's mark. The district court declined to discuss likelihood of confusion because it found KP's use to be fair. However, as discussed above, because in this case there can be no fair use if there is a likelihood of confusion, the likelihood of confusion analysis must be addressed. Therefore, in addressing KP's motion for summary judgment, we must determine whether there are any genuine issues of fact that exist with respect to likelihood of confusion.

■ Likelihood of confusion exists when consumers viewing the mark would probably assume that the goods it represents are associated with the source of a different product identified by a similar mark. *Clicks Billiards,* 251 F.3d at 1265. A finding of likelihood of confusion requires that confusion be probable, not just a possibility. *Rodeo Collection, Ltd. v. West Seventh,* 812 F.2d 1215, 1217 (9th Cir.1987). Thus, "[s]ummary judgment is inappropriate when a jury could reasonably conclude that there is a likelihood of confusion." *Downing v. Abercrombie & Fitch,* 265 F.3d 994, 1008 (9th Cir.2001). Due to the factual nature of likelihood of confusion, determining whether a likelihood of confusion exists at the summary judgment stage is generally disfavored because a full record is usually required to fully assess the facts. *Clicks Billiards,* 251 F.3d at 1265.

KP's motion for summary judgment asserted that no genuine issue of material fact existed with respect to likelihood of

confusion. Therefore, in determining whether likelihood of confusion exists, we must look at the facts in the light most favorable to Lasting.

       The Ninth Circuit generally relies on an eight-factor test in determining whether a likelihood of confusion exists. *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir.1979). Those factors are: 1) the strength of the mark; 2) proximity or relatedness of the goods; 3) the similarity of the marks; 4) evidence of actual confusion; 5) the marketing channels used; 6) the degree of care customers are likely to exercise in purchasing the goods; 7) the defendant's intent in selecting the mark; and 8) the likelihood of expansion into other markets. *Id.* Although the above factors are all appropriate for consideration in determining whether likelihood of confusion exists, not all of the factors are of equal importance or applicable in every case. *Downing*, 265 F.3d at 1008.

The application of these factors involves numerous genuine issues of material fact. As we have discussed, the fair use defense claimed by KP is a classic fair use defense that requires that there not be a likelihood of confusion. Because there are genuine issues of material fact concerning the like-lihood of confusion, KP's motion for summary judgment cannot be upheld on this ground.

## IV. Conclusion

Based on the foregoing, we reverse the district court's grant of summary judgment for KP, the denial of Lasting's motion for summary adjudication, and remand the case for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.

## APPENDIX A

## APPENDIX B