**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KP PERMANENT MAKE-UP, INC.,
        *Plaintiff-counter-*
        *defendant-Appellee,*

v.

LASTING IMPRESSION I, INC; MCN
INTERNATIONAL INC,
        *Defendants-counter-*
        *claimants-Appellants,*

ROES 1 THROUGH 10, inclusive,
        *Counter-defendant-Appellee.*

No. 01-56055

D.C. No.
CV-00-00276-GLT

OPINION

On Remand from the United States Supreme Court

Filed May 19, 2005

Before: Procter Hug, Jr., Melvin Brunetti, and
Diarmuid F. O'Scannlain, Circuit Judges.

Opinion by Judge Hug

**COUNSEL**

Charles C. H. Wu and Mark H. Cheung, Jr., Irvine, California, for the defendants-counterclaimants-appellants.

Michael Machat, Beverly Hills, California, for the plaintiff-counter-defendant-appellee.

**OPINION**

HUG, Circuit Judge:

## I.  Introduction

This case concerns the term "micro colors" and who has the right to use it. The parties use the term "micro color," "micro-color," and "micro colors" interchangeably. For purposes of this opinion, we will refer to the term as "micro color" or "micro colors." The minor difference in these terms has no significance in this action. Lasting Impression I, Inc., owns an incontestable, registered trademark, which consists of the term "micro colors," set in white, within a black box. It is the

registration for this composite mark that is the basis of this litigation.

K.P. Permanent Make-Up, Inc. ("KP") uses the term "micro colors" on its products and brochures. Upon receiving a cease and desist letter from Lasting Impression I, Inc., in January 2000 demanding KP discontinue its use of the term "micro color," KP brought this action for declaratory relief against the defendants Lasting Impression I, Inc., and its distributor, MCN International, Inc. (hereinafter collectively referred to as "Lasting"). KP asserted that Lasting did not have the exclusive right to use the term "micro colors" and that the term was generic and incapable of receiving trademark protection. Lasting counterclaimed, alleging that KP's use of the term "micro color" infringed Lasting's incontestable, registered mark. The parties filed cross motions for summary judgment and summary adjudication.

The district court concluded that the term "micro colors" was generic, or if not generic, descriptive. The court then determined that KP was entitled to continue use of the term "micro colors," in the manner that it had been since 1991, and that Lasting could continue to use its trademarked logo. Lasting appealed the district court's grant of summary judgment in favor of KP, and we reversed. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 328 F.3d 1061, 1073 (9th Cir. 2003) ("*KP I*"). The Supreme Court granted certiorari, 540 U.S. 1099 (2004), and vacated the judgment. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. ___, 125 S. Ct. 542 (2004) ("*KP II*").[1] On remand, we continue to have jurisdiction under 28 U.S.C. § 1291.

---

[1]The Supreme Court did not address our holdings "as to the generic or descriptive nature of the term 'micro color' and any secondary meaning that term has acquired by any of the parties." *KP II*, 125 S. Ct. at 546 n.3. Accordingly, this amended opinion reinstates in full the sections of *KP I* resolving these issues.

## II.  Factual and Procedural Background

KP and Lasting are direct competitors in the permanent makeup industry. To better understand the nature of the term "micro color," a brief description of permanent makeup and the permanent makeup industry is of use. Permanent makeup is similar to a tattoo, in that both are created by injecting pigment into the skin. Permanent makeup has both cosmetic and medical uses. For example, it may be used to create permanent eye liner and to enhance eyebrows, or it may be used in scar revision or in cases of pigmentary disorder. Permanent makeup is also known as micropigmentation.

The pigments used for permanent makeup are sold in small bottles for use by trained professionals. Both KP and Lasting have a separate line of pigments for use in the permanent makeup process. These pigments are sold in various colors. Further, both KP and Lasting sell their pigments to the same end users, such as beauty salons.

Lasting began using "micro colors" commercially as a trademark for its line of permanent makeup pigments in April 1992. The mark was registered on the Principal Register of the United States Patent and Trademark Office on May 11, 1993, as Reg. No. 1,769,592. The mark is registered as a design and word mark and consists of a solid black rectangle, with the words "micro" and "colors" in reverse white lettering. The word "micro" appears directly over the word "colors," and the two are separated by a green horizontal bar. In 1999, Lasting's mark, as registered, became incontestable. An illustration of the registered trademark is shown in Appendix A.

KP used the term "micro color" on its flyers beginning in 1990 and has continued to use the term on its pigment bottles since 1991. KP's use of the term "micro color" on its bottle labels consists of the word in full capitals before the actual color of the pigment in the bottle. For example, KP's use of

the word on a bottle containing black pigment would appear as: "MICROCOLOR: BLACK."

In 1999, KP adopted a new use of the term "micro color." Rather than using it only on its bottles, KP began using the term in its marketing brochures. The brochures display the term "micro color" in a stylized format. "Micro color" sits directly over the word "pigment," and a vial with pigment flowing out of it is depicted to the side of the word display. Additionally, under both the vial and the phrase "micro color pigment" is the word "chart." Both the words "pigment" and "chart" appear in a smaller size type than the term "micro color," making the term the most dominant feature of the image. The brochure on which this image appears contains a chart displaying all the various colors in which KP's pigments are available. An illustration of the term in the marketing brochures is shown in Appendix B.

In March 2000, KP commenced this trademark declaratory relief action against Lasting. In response, Lasting counterclaimed, alleging that KP's use of the phrase "micro color" infringed Lasting's incontestable registration of its "micro colors" mark and sought damages for the infringement. Lasting's counterclaim also alleged unfair competition and false advertising.

KP filed a motion for summary judgment. KP's contentions consisted of the following: (1) Lasting's picture mark registration did not give Lasting the exclusive right to the term "micro color" separate from the logo; (2) the term "micro color" is generic; (3) KP can use "micro color" under the fair use doctrine; (4) the phrase has no secondary meaning; (5) Lasting has also used "micro color" in a generic sense and is estopped from arguing the term is not generic; (6) Lasting cannot show likelihood of confusion; and (7) KP's continuous prior use of the term "micro color" defeats Lasting's claim to exclusivity.

Lasting moved for summary adjudication of certain issues, principally that KP's contention that the term "micro colors" is generic had no merit, that KP's prior use contention had no merit, and that Lasting's registered trademark was not limited to the composite.

The district court granted KP's motion for summary judgment and denied Lasting's motion for summary adjudication. It held that KP could continue to use the term "micro color" in the manner it has since 1991 and that Lasting could continue to use its trademarked logo containing the words "micro color." Specifically, the district court concluded that the term "micro color" is generic, and, if not generic, descriptive. The district court then determined that neither party had acquired secondary meaning in the term "micro color." Finally, the district court held that KP's use was protected under the "fair use" defense, 15 U.S.C. § 1115(b)(4), and because its use was fair, the court declined to discuss KP's prior use contention or likelihood of confusion.

## III.   Analysis

### A.   Standard of Review

A grant of summary judgment is reviewed *de novo*. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.* "Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002) (quotation marks and citations omitted).

### B.   Trademark Infringement

In evaluating the parties' motions for summary judgment and summary adjudication, it is easiest to frame the relevant

issues in the context of a trademark infringement action. KP's motion raises essentially issues that are defenses to an infringement action.

[1] The Lanham Act allows the holder of a protectable trademark to hold liable any person who, without consent, "use[s] in commerce any . . . registered mark" in connection with the sale, offering for sale, distribution, or advertising of any goods or services" which is likely to cause confusion. 15 U.S.C. § 1114(1)(a). Before infringement can be shown, the trademark holder must demonstrate that it owns a valid mark, and thus a protectable interest. *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002). Once the trademark holder shows that it has a protectable interest, the holder must show that the alleged infringer's use of the mark "is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a) & (b); *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 900 (9th Cir. 2002). The alleged infringer has a number of defenses available.

[2] Trademarks are generally divided into five categories: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful. The latter three categories are deemed inherently distinctive and are automatically entitled to protection because they naturally "serve[ ] to identify a particular source of a product . . . ." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).

[3] Generic marks are not capable of receiving protection because they identify the product, rather than the product's source. *See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985). "Generic terms are not registrable, and a registered mark may be canceled at any time on the grounds that it has become generic." *Id.* Merely descriptive marks, which describe the qualities or characteristics of a product, may be registered only if the holder of the mark shows that the mark has acquired distinctiveness through secondary meaning. *Id.*

**[4]** One advantage of registration on the Principal Register is that the mark may attain incontestable status. 5 McCarthy on Trademarks & Unfair Competition § 32:142 (2002). Incontestable status may be obtained by fulfilling the requirements of 15 U.S.C. § 1065. This requires that the registered mark has been in use for five consecutive years and is still in use in commerce. *Id.* In addition, the statute requires that there has been no decision adverse to the registrant's claim of ownership of the mark, the right to register, or the right to keep it on the register. *Id.* No incontestable right can be obtained in a mark which is the generic name for the goods or services. *Id.*

The incontestability provisions of the Lanham Act were designed to provide a means for a trademark holder to "quiet title in the ownership of his mark." *Park 'N Fly*, 469 U.S. at 198. However, although a mark may become incontestable, the label of "incontestability" is rather misdescriptive. 5 McCarthy § 32:147. An incontestable registration is still subject to certain defenses or defects, set forth in 15 U.S.C. § 1115, and as above stated does not apply to a mark that is generic.

The summary judgment entered for KP was based on the following determinations:

    A.   The words "micro color," as distinct from Lasting's entire logo, are not protected because the words are generic and thus cannot constitute a valid mark.

    B.   Even if those words are not generic, they are descriptive and have no secondary meaning and thus cannot constitute a valid mark.

    C.   The "fair use" defense is applicable to KP and precludes a claim of infringement.

Because the district court held that the entire logo with the words "micro colors" on it was valid and protected but that the words "micro colors" were not, our first inquiry is whether the words "micro colors" themselves are protected by the registration of the mark or only the entire logo. We are aided in this inquiry by the sequence of events in the Ninth Circuit case of *Park 'N Fly v. Dollar Park & Fly, Inc.*, 718 F.2d 327 (9th Cir. 1983), *rev'd*, 469 U.S. 189 (1985).

## C.   Protection Afforded to the Words "Micro Colors"

In *Park 'N Fly*, the mark at issue, which had attained incontestable status, consisted of the words "Park 'N Fly" and an airplane logo. The alleged infringer challenged the mark's validity arguing that the words "Park 'N Fly" were generic with respect to airport parking lots. *Id.* at 330. Park 'N Fly had a separate registration for the words "Park 'N Fly" without the airplane logo that was not yet incontestable. In addressing the issue of whether the words "Park 'N Fly" were generic, this court focused entirely on the words in the logo mark, which was incontestable, as opposed to words in the separate registration of the word mark.

Judge Kennedy (now Justice Kennedy), in writing for the court, held that because the most salient feature of the logo mark was the phrase "Park 'N Fly," any infringement of the word mark registration would also be an infringement of the logo mark. *Id.* at 331 n.3. Thus, the opinion concluded that the words "Park 'N Fly" were the most salient feature of the logo mark and that insufficient evidence had been presented to show the words were generic. *Id.*

It is significant that the United States Supreme Court, upon reviewing the Ninth Circuit's decision in *Park 'N Fly*, also recognized that Park 'N Fly had a separate registration for the words "Park 'N Fly," which had not become incontestable. However, it determined that such registration did not affect the resolution of the matter and focused on the incontestable

logo mark in making its ruling. *Park 'N Fly*, 469 U.S. at 192 n.2.

The Supreme Court reversed the Ninth Circuit's opinion on a different issue. The Ninth Circuit opinion had held that a registrant could not use the incontestability of its mark offensively to enjoin infringement and that a challenger could defend such an action on the grounds that the mark is merely descriptive. The Supreme Court reversed that aspect of the Ninth Circuit decision, but remanded for consideration of the challenger's prior use defense and the defense that there was no likelihood of confusion.

The remand by the Supreme Court implicitly acknowledged that it was the words "Park 'N Fly" as the most salient feature of the logo trademark that were to be considered on remand. The Ninth Circuit on remand addressed the words of the logo trademark and affirmed the district court's finding that the challenger did not qualify for the prior use exception and that there was sufficient likelihood of confusion to justify an injunction in favor of Park 'N Fly. *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 782 F.2d 1508, 1509 (9th Cir. 1986).

It is clear under Ninth Circuit law, implicitly approved by the Supreme Court, that not only Lasting's logo mark itself is protected by the registration, but also the words "micro colors" as the most salient feature of the logo mark. In *Park 'N Fly*, the words were held to be the most salient feature of a logo with an airplane; whereas in this case the words in white on a black background are virtually the only salient feature of the logo.

Because the words "micro colors" are the most salient feature of the mark, those words are the focus of the inquiry on validity.

### D.   Genericness

**[5]** KP contends that the words "micro colors" are generic and, thus, not entitled to protection. To determine whether a

term has become generic, we look to whether consumers understand the word to refer only to a particular producer's goods or whether the consumer understands the word to refer to the goods themselves. *Park 'N Fly*, 718 F.2d at 330. If the buyer understands the word to refer to the source of the goods, the term is not generic. However, if the disputed term is "identified with all such goods or services, regardless of their suppliers, it is generic." *Id.* (quotation marks and citation omitted).

**[6]** "Federal registration of a trademark endows it with a strong presumption of validity. The general presumption of validity resulting from federal registration includes the specific presumption that the trademark is not generic." *Coca-Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1254 (9th Cir. 1982) (citations omitted). This presumption of validity extends to the most salient feature of the mark, the words "micro colors."

**[7]** We recently discussed the nature of that presumption in *Tie Tech*, 296 F.3d at 782-83. Citing the wording of 15 U.S.C. § 1115(a), we stated:

> Validity . . . is a threshold issue. On this point, the plaintiff in an infringement action with a registered trademark is given the prima facie or presumptive advantage on the issue of validity, thus shifting the burden of production to the defendant to prove otherwise. . . . Or, to put it as we did in *Vuitton* [*Et Fils S.A. v. J. Young Enterprises, Inc.*, 644 F.2d 769 (9th Cir. 1981)], the defendant then bears the burden with respect to invalidity.

*Id.* at 783. In granting the summary judgment to KP, the district court erred in placing the burden on Lasting. The burden was on KP to produce sufficient evidence to overcome the presumption.

**[8]** The question then becomes what evidence must be produced to overcome the presumption. We noted in *Tie Tech* at the summary judgment stage that all inferences from facts must be drawn most favorably to the non-moving party. *Id.* In evaluating the summary judgment awarded to KP, those inferences must be drawn in favor of Lasting, as the non-moving party. We stated in *Tie Tech*, after noting that this type of issue is generally viewed as an intensely factual issue, that if the challenger "can demonstrate through law, undisputed facts or a combination thereof that the mark is invalid the [trademark holder] cannot survive summary judgment." *Id.*

KP relied principally on an affidavit of the owner, Theresa Kim Plante, which stated: "There are various synonyms for micro colors, such as: micropigment, micro color pigments, micropigment colors and pigment colors. Both these terms micropigments and micro colors are abbreviations for micropigmentation colors. They all mean the same thing and are generic." Whether all of these terms could be synonyms for each other is highly doubtful. KP produced no evidence that consumers understood them to be synonyms. Both parties agree that the cosmetic process is "micropigmentation." That term alone would no doubt be generic, however whether "micropigmentation colors" is generic is a different question. Plante's affidavit says it is generic and that "micro colors" is simply an abbreviation for that term, which she contends is generic. The affidavits of Story, McKinstry and Leung state that "pigment" is generally used to refer to the liquid injected into the skin as permanent makeup, whereas "color" refers to the hue or shade of the pigment. Thus, according to these affiants, the color or hue of the pigment has nothing to do with the generic process and, therefore, "micro colors" is not an abbreviation for a generic process.

The contention that "micropigmentation colors" is the generic term for the micropigmentation process and that "micro colors" is an abbreviation for that term and thus also generic is not one that reasonably minded jurors could accept.

The words themselves do not support that contention, and KP introduced no evidence that the consumers so construed the words.

KP's other support for its generic argument was a statement that Story, the founder of Lasting, had made. KP contends that she used "micro colors" as a generic term in a brochure and an article. Story explained that neither reference was to "micro colors" as generic and explained that, in context, the references were to the "Micro Colors" brand name and not intended as a generic term.

The first alleged generic use is in a brochure in which Lasting stated,

> MICRO-COLORS® pigment is the first and only MICRO-COLORS available by MCN. All other brands with similar or identical names are not associated with MCN. Due to the high demand for this superior quality pigment, many imposter pigments have been developed to create confusion in the marketplace. Make an informed purchasing decision: verify that MCN is the manufacturer before you buy. MICRO-COLORS is a federally registered trade name and trademark that is available only via MCN.

Rather than using the term in the generic sense, it is clear from the document itself that Lasting was distinguishing its mark from those who may have used MICRO-COLORS without authorization.

The second alleged generic use is in a trade article where Lasting discusses its product. In this article, Lasting states "all Lasting Impression I pigments (Micro-Colors) are six microns." From then on in the article, Lasting uses the term "Micro-Colors" (capitalized) instead of pigments in a general sense. Again, in context, it is clear that Lasting was not referring to "micro colors" in a generic sense. Rather, Lasting had

defined *its product* by its trademark "Micro-Colors" and uses that term to describe *its pigments* elsewhere in the article.

**[9]** KP presented no evidence that "micro colors" was used or understood by consumers as a generic term rather than a brand name. Lasting did present evidence that "Micro Colors" is used and understood as a brand name not a generic term. We held in *Park 'N Fly* that "Without evidence that to the consuming public the primary significance of the term [Park 'N Fly] is to denote the service Park 'N Fly offers and not its source, we are without a sufficient evidentiary basis to find Park 'N Fly's mark generic." *Park 'N Fly*, 718 F.2d at 330.

**[10]** There is no genuine issue of material fact as to whether the salient part of Lasting's trademark, the words "micro colors," is generic. A reasonably minded jury could not conclude from the evidence produced that "micro colors" is a generic term. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

**[11]** Based on the foregoing discussion of genericness, KP's motion for summary judgment cannot be upheld on this ground. Furthermore, Lasting's motion for summary adjudication on the issue of genericness should be granted.

### E.   Descriptiveness

**[12]** The district court also determined that the words "micro colors" were not protected because they were descriptive and Lasting had not acquired a secondary meaning in those words. A descriptive mark that has become incontestable is conclusively presumed to have acquired secondary meaning. *Entrepreneur Media*, 279 F.3d at 1142 n.3. This means that a defendant in a trademark infringement action cannot assert that an incontestable mark is invalid because it is descriptive and lacks secondary meaning. *Park 'N Fly*, 469 U.S. at 205.

The district court recognized that Lasting's registered logo mark was incontestable. However, it held that the logo mark's incontestable status did not apply to the term "micro colors" because the registration was for the "micro colors" logo, and not merely the term.

**[13]** We conclude that the district court erred in requiring that Lasting demonstrate secondary meaning in the term apart from the mark. As we have discussed, a registered mark may be infringed even if the exact mark is not being imitated and, thus, the challenger of an incontestable mark cannot assert that the most salient feature of the mark is descriptive and lacks secondary meaning. *See Park 'N Fly*, 469 U.S. at 192 n.2, 205. When the holder of an incontestable mark is complaining that the most salient feature of its mark is being imitated and a likelihood of confusion may result, the holder of the mark does not have to show that the salient feature, apart from the mark, has acquired secondary meaning. Rather, the conclusive presumption that the mark has acquired secondary meaning extends to the most salient feature of the mark.

**[14]** Thus, Lasting's incontestable registration is conclusive evidence that the mark is non-descriptive or has acquired secondary meaning, and there is no need to require a showing of secondary meaning in the term "micro colors" apart from the mark. Therefore, KP's motion for summary judgment cannot be upheld on this ground.

## F.   The Fair Use Defense and Likelihood of Confusion

**[15]** We next turn to the issues of fair use and likelihood of confusion. The district court granted KP's motion for summary judgment on the basis of fair use and held that it need not discuss any likelihood of confusion. We reversed this decision, holding that "there can be no fair use if there is a likelihood of confusion," and that "the likelihood of confusion analysis must be addressed." *KP I*, 328 F.3d at 1072. The Supreme Court's opinion in *KP II* clarified the relationship

between fair use and likelihood of confusion. It noted that the Lanham Act provides a fair use defense against the infringement of an incontestable mark to a party whose

> "use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, . . . of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin . . . ."

125 S. Ct. at 548 (quoting 15 U.S.C. § 1115(b)(4)). The Supreme Court noted that there was a division among the Circuit Courts of Appeals as to whether a likelihood of confusion precludes the fair use defense. The Fifth, Sixth, and Ninth Circuits held that it did; and the Fourth and Seventh Circuits held it did not.[2] In resolving the conflict, the Supreme Court summarized its holding as follows:

> In sum, a plaintiff claiming infringement of an incontestable mark must show likelihood of consumer confusion as part of the prima facie case, 15 U.S.C. § 1115(b), while the defendant has no inde-

---

[2] *Compare KP I*, 328 F.3d at 1072, *citing Lindy Pen Co. v. Bic Pen Corp.*, 725 F.2d 1240, 1248 (9th Cir. 1984) (likelihood of confusion bars the fair use defense), *PACCAR, Inc. v. TeleScan Technologies, L.L.C.*, 319 F.3d 243, 256 (6th Cir. 2003) ("[A] finding of a likelihood of confusion forecloses a fair use defense"), *and Zatarains, Inc. v. Oak Grove Smokehouse*, 698 F.2d 786, 796 (5th Cir. 1983) (alleged infringers were free to use words contained in a trademark "in their ordinary, descriptive sense, so long as such use [did] not tend to confuse customers as to the source of the goods"), *with Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30-31 (2d Cir. 1997) (the fair use defense may succeed even if there is likelihood of confusion), *Shakespeare Co. v. Silstar Corp. of Am.*, 110 F.3d 234, 243 (4th Cir. 1997) ("[A] determination of likely confusion [does not] preclud[e] considering the fairness of use"), *and Sunmark, Inc. v. Ocean Spray Cranberries, Inc.*, 64 F.3d 1055, 1059 (7th Cir. 1995) (finding that likelihood of confusion did not preclude the fair use defense).

pendent burden to negate the likelihood of any con-
fusion in raising the affirmative defense that a term
is used descriptively, not as a mark, fairly, and in
good faith.

*Id.* at 551.

The Supreme Court also stated:

Our holding that fair use can occur along with some
degree of confusion does not foreclose the relevance
of the extent of any likely consumer confusion in
assessing whether a defendant's use is objectively
fair.

*Id.* at 550. This issue was left for the consideration of the
Ninth Circuit in this case. As the Supreme Court noted, two
other Circuit Courts of Appeals have considered the extent of
any customer confusion to be relevant to the determination of
the fairness of the use, citing *Shakespeare Co. v. Silstar
Corp.*, 110 F.3d 234 (4th Cir. 1997), and *Sunmark v. Ocean
Spray Cranberries, Inc.*, 64 F.3d 1055 (7th Cir. 1995). The
Court also cited the Restatement (Third) of Unfair Competi-
tion § 28 for the same proposition. *KP II*, 125 S. Ct. at 550-
51.

In *Shakespeare Co.*, the opinion stated: "*to the degree* that
confusion is likely, a use is less likely to be found fair." 110
F.3d at 243. The Restatement section cited by the Supreme
Court provides that

the strength of the plaintiff's mark and the extent of
likely or actual confusion are important factors in
determining whether a use is fair. Surveys and other
evidence relating to the perceptions of prospective
purchasers are thus relevant to the application of the
defense, and a use that is likely to create substantial
confusion will not ordinarily be considered a fair

use. The defendant bears the burden of establishing the defense of fair use under this Section.

Restatement (Third) of Unfair Competition § 28 cmt. b (1995).

In its motion for summary judgment, KP's contentions included in part that Lasting cannot show likelihood of confusion and that KP can use "micro color" under the fair use doctrine. Therefore, in once again addressing KP's motion for summary judgment on remand, we must confront two questions: (1) whether, on the record before us, Lasting has produced adequate evidence to create a material issue of fact regarding likelihood of confusion; and if so, (2) whether KP has proven the elements of its fair use defense despite some possible confusion. *See KP II*, 125 S. Ct. at 549. After receiving supplemental briefing from the parties, we once again find ourselves unable to uphold the district court's summary judgment in favor of KP at this juncture.

## *Likelihood of Confusion*

KP's motion for summary judgment asserted that no genuine issue of material fact existed with respect to likelihood of confusion. Viewing the facts in the light most favorable to Lasting, we disagree. Likelihood of confusion exists when consumers viewing the mark would probably assume that the goods it represents are associated with the source of a different product identified by a similar mark. *Clicks Billiards*, 251 F.3d at 1265. "[S]ummary judgment is inappropriate when a jury could reasonably conclude that there is a likelihood of confusion." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1008 (9th Cir. 2001). Due to the factual nature of likelihood of confusion, determining whether a likelihood of confusion exists at the summary judgment stage is generally disfavored because a full record is usually required to fully assess the facts. *Clicks Billiards*, 251 F.3d at 1265.

We generally rely on an eight-factor test in determining whether a likelihood of confusion exists. *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). Those factors are: 1) the strength of the mark; 2) proximity or relatedness of the goods; 3) the similarity of the marks; 4) evidence of actual confusion; 5) the marketing channels used; 6) the degree of care customers are likely to exercise in purchasing the goods; 7) the defendant's intent in selecting the mark; and 8) the likelihood of expansion into other markets. *Id.* Although the above factors are all appropriate for consideration in determining whether likelihood of confusion exists, not all of the factors are of equal importance or applicable in every case. *Downing*, 265 F.3d at 1008.

**[16]** Viewing the facts in the light most favorable to Lasting, it appears from the record that genuine issues of material fact remain as to the likelihood of customer confusion in this case. Accordingly, we cannot uphold the district court's grant of summary judgment to KP on this ground.

*Fair Use*

The fair use defense only comes into play once the party alleging infringement has shown by a preponderance of the evidence that confusion is likely. *See KP II*, 125 S. Ct. at 549. We hold in accordance with *Shakespeare Co.*, 110 F.3d at 243, that the degree of customer confusion remains a factor in evaluating fair use.

**[17]** Summary judgment on the defense of fair use is also improper. There are genuine issues of fact that are appropriate for the fact finder to determine in order to find that the defense of fair use has been established. Among the relevant factors for consideration by the jury in determining the fairness of the use are the degree of likely confusion, the strength of the trademark, the descriptive nature of the term for the product or service being offered by KP and the availability of alternate descriptive terms, the extent of the use of the term

prior to the registration of the trademark, and any differences among the times and contexts in which KP has used the term.

The district court should consider the effect of any specific concessions Lasting may have made during the course of litigation. *See KP II*, 125 S. Ct. at 551 n.6.

## IV.   Conclusion

We reverse the district court's grant of summary judgment for KP. With regard to Lasting's motion for summary adjudication, we hold that the words "micro colors," as the most salient feature of the trademark, are protected and are not generic. We remand the case for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.



APPENDIX A



APPENDIX B

