**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

RUDOLPH INTERNATIONAL, INC., a
California corporation, d/b/a Soft
Touch Professional Beauty
Products,
            *Plaintiff-Appellant,*

v.

REALYS, INC., a California
corporation, a/k/a Tropical Shine;
MICHAEL FALLEY, individually and
as alter ego of Realys, Inc.,
            *Defendants-Appellees.*

No. 05-55605

D.C. No.
CV-03-01247-AHS

OPINION

Appeal from the United States District Court
for the Central District of California
Alicemarie H. Stotler, District Judge, Presiding

Argued and Submitted
March 5, 2007—Pasadena, California

Filed April 12, 2007

Before: Robert R. Beezer and Stephen Reinhardt,
Circuit Judges, and Thelton E. Henderson,* District Judge.

Opinion by Judge Beezer

---

*The Honorable Thelton E. Henderson, Senior United States District
Judge for the Northern District of California, sitting by designation.

**COUNSEL**

Lawrence E. Heller, Heller & Edwards, Beverly Hills, California, for the plaintiff-appellant.

Darrel L. Olson, Knobbe, Martens, Olson & Bear, LLP, Irvine, California, for the defendants-appellees.

**OPINION**

BEEZER, Circuit Judge:

In this trademark infringement case, Plaintiff Rudolph International, Inc. ("Rudolph") appeals the district court's grant of summary judgment to Defendant Realys, Inc. ("Realys"). The district court held that the mark "disinfectable" is generic in the parties' line of business and cannot be the subject of trademark protection. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

I

Rudolph and Realys manufacture and sell abrasive nail files and related products. California regulations required nail technicians to disinfect all instruments used on multiple customers. *See* Cal. Code Regs. tit. 16, § 979 ("Disinfecting Non-Electrical Instruments and Equipment"), § 981(a) ("All instruments and supplies which come into direct contact with a

patron and cannot be disinfected (for example, cotton pads, sponges, emery boards, and neck strips) shall be disposed of in a waste receptacle immediately after use."). Several other states had similar regulations.[1]

In response to these regulations, Rudolph tested and developed a line of nail files that could withstand the disinfection process. Until April 2001, Rudolph had used the term "sanitizable" to describe its nail files; thereafter it used the term "disinfectable" in product packaging and advertising (e.g., "Antibacterial Disinfectable"). Rudolph marketed the disinfectable files under its established brand names of "Soft Touch," "Les Mirages" and "Quadmetrics." Rudolph's founder and principal James Rudolph was quoted in a leading trade magazine saying that "[t]he word 'sanitizable' as it relates to nail and foot files needs to be abandoned forever. . . . The word to adopt is 'disinfectable.' " Patricia Oropeza, *Are Your Files Clean Enough?*, Nails Magazine, Aug. 2001, at 131, 133.

Rudolph concurrently sent a letter to every state's cosmetology board urging them to adopt disinfection requirements similar to California. Rudolph also applied to the Patent and Trademark Office ("PTO") to register "disinfectable" as a trademark, but its application was rejected.

In mid-2002, Realys likewise replaced the term "sanitizable" with "disinfectable" on its nail files at the behest of its largest customer. Asserting trademark rights in "disinfectable," Rudolph sent Realys a cease-and-desist letter in March 2003 demanding Realys halt its use of the term. Realys continued to use the term.

Rudolph filed suit against Realys for trademark infringe-

---

[1]*See, e.g.,* Neb. Admin. Code Title 172, Ch. 34; Or. Admin. R. 817-010-0068; 04-030-030 Vt. Code R. § 12.2(b)(h); 18 Va. Admin. Code 41-20-270(B)(7).

ment and related claims in August 2003. Realys moved for summary judgment, and on March 24, 2005, the district court granted Realys' motion. The court held that "disinfectable" is a generic term when used in the nail file industry and cannot be the subject of trademark protection.

Rudolph filed its timely notice of appeal on April 20, 2005.

II

We review de novo a district court's grant of summary judgment. *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1146 n.2 (9th Cir. 1999). The district court's findings of fact, however, are reviewed for clear error. *Husain v. Olympic Airways*, 316 F.3d 829, 835 (9th Cir. 2002), *aff'd*, 540 U.S. 644 (2004). In reviewing a grant of summary judgment, we determine, "viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005).

**[1]** We recognize four categories of terms in determining trademark protection: 1) generic; 2) descriptive; 3) suggestive; and 4) arbitrary or fanciful. *Filipino Yellow Pages*, 198 F.3d at 1146 (citing *Surgicenters of Am., Inc. v. Med. Dental Surgeries, Co.*, 601 F.2d 1011, 1014 (9th Cir. 1979)). A generic term, also known as a common descriptive term, refers to the type or species of the product at issue. *Id.* at 1147. Generic terms cannot be protected trademarks. *Id.* Descriptive terms "generally do not enjoy trademark protection" but may be protected if they acquire " 'secondary meaning' in the minds of consumers, i.e., [they] become distinctive of the trademark applicant's goods in commerce." *Id.* Marks that are suggestive, arbitrary or fanciful can be protected without demonstrating secondary meaning. *See AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 349 (9th Cir. 1979). Where,

as here, an allegedly valid trademark has not been registered with the PTO, the plaintiff bears the burden of persuasion that the mark is not generic. *Filipino Yellow Pages*, 198 F.3d at 1146.

**[2]** Rudolph argues that the district court erred in determining that the term "disinfectable" is generic and asserts that "disinfectable" should be classified as a suggestive mark. A term is suggestive "if 'imagination' or a 'mental leap' is required in order to reach a conclusion as to the nature of the product being referenced." *Id.* at 1147. The district court found that "disinfectable" has a clear and readily understandable meaning: something capable of being disinfected. Unlike, for example, computer virus software that "disinfects" your hard drive, the nail files at issue here are *literally* disinfected. *See* Webster's Third New Int'l Dictionary 650 (defining the verb disinfect as "to free from infection esp. by destroying harmful microorganisms"). No imagination or mental leap is required to understand that "disinfectable" in the nail file industry means "capable of being disinfected."

Adjectives, as well as nouns, can be generic marks. *See Nupla Corp. v. IXL Mfg. Co.*, 114 F.3d 191, 196 (Fed. Cir. 1997) (holding that "cush-n-grip" is generic adjective for cushion-gripped tools); *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 81 (7th Cir. 1977) (holding that "light" and "lite" are generic adjectives for beer and opining that "[o]therwise a manufacturer could remove a common descriptive word from the public domain by investing his goods with an additional quality, thus gaining the exclusive right to call his wine 'rose,' his whisky 'blended,' or his bread 'white' "). Rudolph's arguments that "disinfectable" is suggestive are untenable.

**[3]** Realys contends that the term "disinfectable" is generic. The question of genericness is often answered by reference to the "who-are-you/what-are-you" test: a valid trademark answers the former question, whereas a generic product name

or adjective answers the latter. *Filipino Yellow Pages*, 198 F.3d at 1147. "[I]f the primary significance of the trademark is to describe the *type of product* rather than the *producer*, the trademark is a generic term and cannot be a valid trademark." *Id.* (emphasis in original).

**[4]** Our review of the record amply supports the district court's conclusions. The district court correctly found that the term "disinfectable" has a history of established use as a generic adjective within the nail care industry as well as in other fields such as medicine and dentistry. For example, the district court noted that "disinfectable" is included in at least 25 patents issued since 2001. Rudolph admits that the development and marketing of its disinfectable nail files originated from regulatory obligations that nail salons only reuse abrasive files if they are capable of being disinfected—the precise definition for the term "disinfectable." At least one state had gone so far as to include the term within its administrative code. *See* 40-12 Or. Bull. 153 (Dec. 1, 2001). Rudolph's own use of the term "disinfectable" before this litigation commenced is inconsistent with its current position that the term is not a descriptive subset of its nail file product line but rather a true trademark.

**[5]** The term "disinfectable" relates to the type of product rather than its source and consequently falls on the "what-are-you" side of the genericness test.[2] In contrast, the source of

---

[2]This court has noted that "the lines of demarcation between the four categories of marks are not always clear." *Filipino Yellow Pages*, 198 F.3d at 1151 n.5 (quoting *Surgicenters*, 601 F.2d at 1014, 1015). Differentiation between generic marks and "weak descriptive marks" in particular can be "almost imperceptible." *Id.* After comparing the term "disinfectable" to other marks we have held to be generic—"surgicenters" and "cush-n-grip," for example—we conclude that the mark is properly classified as generic. Further, in light of the statutory requirements that nail files used on multiple customers be capable of being disinfected, granting trademark protection to Rudolph's use of "disinfectable" would effectively "grant the owner of the mark a monopoly, since a competitor could not describe his goods as what they are." *Surgicenters*, 601 F.2d at 1017 (quoting *CES Pub. Corp. v. St. Regis Publ'ns, Inc.*, 531 F.2d 11, 13 (2d Cir. 1975)).

the product is identified by Rudolph's established brand names of "Soft Touch," "Les Mirages" and "Quadmetrics." The district court correctly held that Rudolph failed to introduce sufficient evidence to meet its burden of persuasion that "disinfectable" is not a generic mark. This question does not present a genuine issue of material fact and is appropriate for summary judgment notwithstanding our reluctance to take such action in trademark cases.[3] *See Surgicenters of Am.*, 601 F.2d at 1012 (affirming summary judgment on genericness question). Because we affirm the district court's determination that "disinfectable" is a generic mark, we need not reach its alternative holdings.

Disinfectable: not trademarkable. **AFFIRMED.**

---

[3]We have previously held that "[b]ecause of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena." *KP Permanent Make-Up, Inc.*, 408 F.3d at 602 (quoting *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002)).