**MOROCCANOIL, INC.**

v.

**MOROCCAN GOLD, LLC, et al.**

**Case No. CV 08–05356–RGK (PLAx).**

United States District Court,
C.D. California.

Dec. 9, 2008.

Annette Kazmerski, Scott A. Hampton, William C. Conkle, Conkle Kremer and Engel, Santa Monica, CA, for Moroccanoil, Inc.

Bernadette R. Reilly, Thomas H. Curtin, Lathrop and Gage, LC, New York, NY, Jeffrey H. Grant, John Shaeffer, Spillane Shaeffer Aronoff Bandlow, LLP, Los Angeles, CA, for Moroccan Gold, LLC, et al.

**Proceedings: (IN CHAMBERS)** Order Re Plaintiff's Motion for Preliminary Injunction (DE 9)

R. GARY KLAUSNER, District Judge.

## I. INTRODUCTION

Plaintiff Moroccanoil ("Plaintiff") sued Defendants Moroccan Gold, LLC and Fantasia Industries Corp. (collectively "Defendants") on August 14, 2008, asserting claims for (1) trademark infringement under the Lanham Act, (2) unfair competition under the Lanham Act, (3) unfair competition under California Business and Professions Code Section 17200, (4) common law trademark infringement, (5) intentional interference with prospective business advantage, and (6) negligent interference with prospective business advantage.[1]

Presently before the Court is Plaintiff's Motion for Preliminary Injunction. For the following reasons, the Court **GRANTS** Plaintiff's Motion.

## II. FACTUAL BACKGROUND

The parties allege the following facts.

The argan tree grows only in Morocco. Nut kernels from this rare tree produce a unique oil known as argan oil. For centuries, Moroccans have used argan oil for dietary and other purposes.

---

1. On October 29, 2008, Defendants counterclaimed against Plaintiff seeking cancellation of Plaintiff's trademark registration.

## A. *Moroccanoil*

Since January 1, 2007, Plaintiff has distributed a hair care product line containing argan oil from Morocco to salons in the United States. Plaintiff's most successful product is a hair conditioner named "Moroccanoil Oil Treatment." This product comes in an amber-colored "druggist-style" bottle with a black screw-on cap, and it bears the mark MOROCCANOIL in prominent lettering. The front label is blue and contains the mark MOROCCANOIL in large vertical white lettering on the left side of the label.

On March 5, 2007, Plaintiff applied for a trademark for MOROCCANOIL. On August 5, 2008, the United States Patent and Trademark Office ("USPTO") registered Plaintiff's mark MOROCCANOIL for hair conditioners, namely, curl creams, hydrating styling creams, intense moisturizing masques, and styling and finishing oils. Plaintiff has filed six other trademark applications for Moroccanoil-related logos and packaging, which are currently pending in the USPTO.

## B. *Moroccan Gold and Moroccan Miracle Oil*

Since March 2008, Defendants have marketed and sold a hair care product called "Moroccan Miracle Oil Hair Treatment." Like Plaintiff's "Moroccanoil Oil Treatment," Defendants' product is made with argan oil from Morocco. Defendants' product comes in an amber-colored "druggist-style" bottle with a black screw-on cap, and bears the marks MOROCCAN GOLD and MOROCCAN MIRACLE OIL in prominent lettering. The front label features an orange sky and a minaret, and contains the mark MOROCCAN GOLD in large vertical white lettering on the left side of the label.

Before introducing their product into the marketplace, Defendants applied to the USPTO on January 30, 2008, for federal registration of the mark MOROCCAN OIL. The USPTO rejected this application in February 2008, citing Plaintiff's prior pending application for the mark MOROCCANOIL. Defendants subsequently proposed an amendment to its application to change its mark to MOROCCAN GOLD. In May 2008, the USPTO rejected Defendants' amendment as a material alteration to the mark, and informed Defendants that there "may be a likelihood of confusion" between Defendants' mark MOROCCAN GOLD and Plaintiff's prior pending marks. By this time, Defendant had already begun distributing and selling its product to salons.

According to Defendants, their product was created in response to a new trend in the hair care industry of using argan oil as an ingredient in hair care products. According to Plaintiff, however, Defendants' product was created as an intentional copy of Plaintiff's popular "Moroccanoil Oil Treatment."

## C. *The Lawsuit*

Plaintiff sued Defendants on August 14, 2008 for numerous claims, including trademark infringement. In its Complaint, Plaintiff alleges that Defendants intentionally copied its trademark and trade dress. Plaintiff further alleges that Defendants engaged in unfair business practices by telling consumers that (1) Plaintiff's product is a "fake" while Defendants' product is genuine, (2) Plaintiff's product has been replaced by Defendants' product, and (3) Defendants' product is distributed or endorsed by Plaintiff. Moreover, Plaintiff contends that Defendants' product and wrongful acts have eroded and destroyed

Plaintiff's hard-earned goodwill, reputation, and market share.

Plaintiff now seeks to enjoin Defendants from distributing and selling hair care products with "Moroccan Oil", "Moroccan Miracle Oil", "Moroccan Gold" or any other name confusingly similar to Plaintiff's registered trademark "Moroccanoil" in the product name, description, or advertising. This also includes hair care products with a confusingly similar trade dress to Plaintiff's "Moroccanoil Oil Treatment" including packaging that uses an amber-colored "druggist-style" bottle with a black screw-on cap and a front label that states the manufacturer's name in white vertical lettering along the left side. Finally, Plaintiff also seeks to enjoin Defendants from using improper sales techniques, such as misrepresentations and "bait and switch" artifices, to unfairly compete with Plaintiff.

## III. *JUDICIAL STANDARD*

■ "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.,* —— U.S. ——, 129 S.Ct. 365, 376, 172 L.Ed.2d 249 (2008). A plaintiff seeking a preliminary injunction must establish that (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest. *Id.* at 374. In each case, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Village of Gambell,* 480 U.S. 531, 542, 107

S.Ct. 1396, 94 L.Ed.2d 542 (1987). "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982).

## IV. *DISCUSSION*

A plaintiff may satisfy the preliminary injunction test by showing that (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest. *See Winter,* 129 S.Ct. at 374.

Plaintiff contends that it is entitled to a preliminary injunction because it has satisfied the above-stated preliminary injunction test. For the following reasons, the Court agrees.

### A. *Likely to Succeed on the Merits*

■ A plaintiff may show that it is likely to succeed on the merits of its trademark infringement claim under the Lanham Act by establishing that (1) it has a "valid, protectable trademark," and (2) defendant's "use of the mark is likely to cause confusion." *See Applied Info. Sciences Corp. v. eBay, Inc.,* 511 F.3d 966, 969 (9th Cir.2007).

For the following reasons, Plaintiff has shown that it is likely to succeed on the merits of its trademark infringement claim under the Lanham Act.[2]

### 1. *Valid, protectable trademark*

■ Registration of a trademark with the USPTO constitutes prima facie evi-

**2.** Although Plaintiff asserts several claims against Defendants, the Court's analysis of "likelihood of success" is limited to Plaintiffs claim for trademark infringement, under which injunctive relief is appropriate. *See, e.g., GoTo.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1211 (9th Cir.2000).

dence of the validity of the mark and the registrant's exclusive right to use the mark on the goods and services delineated in the registration. *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir.1999); *see Applied Info.*, 511 F.3d at 970.

■ Here, Plaintiff has established that it has a valid, protectable trademark because its mark, MOROCCANOIL, is registered on the Principal Register in the USPTO. (Tal Decl. Ex. 13.)

■ A defendant may nonetheless rebut the presumption of a mark's validity by, for example, showing that someone else first used the mark in commerce or that the registration was flawed. *See Applied Info.*, 511 F.3d at 970, n. 2.

Here, Defendants attempt, but fail, to rebut the presumption of Plaintiff's mark's validity. Defendants do not contend that someone else first used the mark in commerce, nor that the registration was flawed. Rather, they attack the validity of Plaintiff's mark by contending that it is descriptive and has not acquired a secondary meaning in the market. However, as discussed in section IV.A.2.i.a. below, Plaintiff has presented evidence showing that it will likely succeed in establishing that its mark is suggestive, not merely descriptive. Thus, Defendants' contentions do not overcome the presumption that Plaintiff's mark is valid.

Thus, Plaintiff has presented sufficient evidence showing it will likely succeed on this element of its trademark infringement claim.

## 2. *Likely to cause confusion*

■ The Ninth Circuit considers the following factors, known as *Sleekcraft* factors, in determining whether likelihood of confusion exists (1) strength of the mark, (2) proximity or relatedness of the goods, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) degree of care customers are likely to exercise in purchasing the goods, (7) defendant's intent in selecting the mark, and (8) likelihood of expansion into other markets. *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 608 (9th Cir.2005).

### i. *Sleekcraft Factors*

#### a. *Strength of the mark*

■ The stronger the mark, the greater the protection it receives. *See Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 (9th Cir.2002). A suggestive mark "requires imagination, thought and perception to reach a conclusion as to the nature of goods." *Surgicenters of Am., Inc. v. Med. Dental Surgeries, Co.*, 601 F.2d 1011, 1019 (9th Cir.1979). Such a mark receives trademark protection without proof of secondary meaning. *See Entrepreneur Media*, 279 F.3d at 1141–42.

Here, Plaintiff has presented sufficient evidence that it will likely succeed in establishing that its mark is suggestive. Specifically, Plaintiff has shown that the term MOROCCANOIL does not convey an immediate idea of a line of hair care products containing argan oil. (Tal Decl. ¶¶ 7–10, 13, Ex. 1.) Rather, the term MOROCCANOIL suggests many possible categories of oil originating from Morocco, including petroleum, olive oil, almond oil, and rose oil. (Tal Decl. ¶¶ 7–10, 13, Ex. 1.) Thus, Plaintiff has shown that an inferential step of the imagination is needed to come to the conclusion that MOROCCANOIL is a hair care product containing argan oil.

Therefore, this factor weighs in favor of finding likely confusion.

### b. Relatedness of the goods

 Related goods are those products that "would be reasonably thought by the buying public to come from the same source if sold under the same mark." *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 n. 10 (9th Cir.1979), *abrogation in part on other grounds recognized by, Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n. 19 (9th Cir.2003).

Here, Plaintiff has presented sufficient evidence that it will likely succeed in establishing a high degree of relatedness. Specifically, Plaintiff has shown that both parties' products are hair treatment oil containing argan oil from Morocco. (Tal Decl. ¶¶ 16, 18, Exs. 1, 2, 8, 25.) Thus, it is reasonable that the buying public would think that the products come from the same source if sold under the same mark.

Thus, this factor weighs in favor of finding likely confusion.

### c. Similarity of the marks

 The greater the similarity of the marks, the greater the likelihood of confusion. *Entrepreneur Media*, 279 F.3d at 1144. The Ninth Circuit has developed the following three principles, which courts should consider when conducting the "similarity" analysis (1) the marks must be considered in their entirety and as they appear in the marketplace, (2) similarity is adjudged in terms of appearance, sound, and meaning, and (3) similarities are weighed more heavily than differences. *See id.*

First, Plaintiff has presented sufficient evidence that it will likely succeed in establishing significant similarity among the marks, when considered in their entirety and as they appear in the marketplace. Specifically, Plaintiff has presented evidence showing (1) the parties' marks appear in similar amber-colored "druggist-style" bottles with black screw-on caps, (2) these bottles are of similar shape and size, (3) the parties' marks appear prominently on the front labels affixed to their respective bottles, (4) Plaintiff's mark MOROCCANOIL, like Defendant's mark MOROCCAN GOLD, is printed vertically in white lettering along the left side of the front label, and (5) both products contain the terms "Alcohol Free" and "Sin Alcohol" centered at the bottom of their respective labels in white font. (Tal Decl. Exs. 1, 2.)

Second, Plaintiff has presented sufficient evidence that it will likely succeed in establishing similarity among the marks in terms of appearance, sound, and meaning. (Tal Decl. Exs. 1, 2.) In terms of appearance, as discussed above, Plaintiff has shown that the marks appear quite similar. In terms of sound, Defendants' marks MOROCCAN GOLD and MOROCCAN MIRACLE OIL are phonetically similar to Plaintiff's mark MOROCCANOIL because they all share the initial sound "Moroccan." In addition, Defendants' mark MOROCCAN MIRACLE OIL also sounds phonetically similar to Plaintiff's mark MOROCCANOIL because both marks contain the final sound "oil." In terms of meaning, Plaintiff's mark MOROCCANOIL and Defendants' mark MOROCCAN MIRACLE OIL appear to have the same meaning, i.e., an oil from Morocco.

Third, the above-stated similarities carry more weight than differences. There are differences in the products appearance (i.e. different label colors), mark's sound (i.e. additional sound of "miracle" in between "Moroccan" and "oil"), and mark's meaning (i.e. Plaintiff's mark connotes an

oil from Morocco, and Defendants' mark connotes gold from Morocco). (Tal Decl. Exs. 1, 2.) However, as discussed above, Plaintiff has shown that it will likely succeed in establishing that these differences are minor compared to the striking similarities among the products.

In sum, in light of the significant similarities discussed above, the Court finds that this factor weighs in favor of finding likely confusion.

### d. Evidence of actual confusion

■ "Evidence of actual confusion by consumers is strong evidence of likelihood of confusion." *Surfvivor Media, Inc. v. Survivor Productions.*, 406 F.3d 625, 633 (9th Cir.2005). Courts considering this factor often determine "whether merchants and non-purchasing members of the public, as well as actual consumers, were confused." *Id.*

Here, Plaintiff has presented sufficient evidence that it will likely succeed in establishing actual confusion by consumers. Specifically, Plaintiff has presented declarations from beauty salon owners and stylists who were confused about Plaintiff and Defendants' products. (Perricelli Decl. ¶ 8; Russell Decl. ¶¶ 7–9; Keel Decl. ¶¶ 7–8; Shriver Decl. ¶¶ 7–8.) The Declarations of Cynthia Perricelli ("Perricelli"), Rhonda Russell ("Russell"), Laurel Keel, and Dorothy Shriver show that they all either individually encountered or mistakenly purchased Defendants' products bearing the marks MOROCCAN GOLD and MOROCCAN MIRACLE OIL, and initially believed that these products were associated with Plaintiff's product. (Perricelli Decl. ¶ 8; Russell Decl. ¶¶ 7–9; Keel Decl. ¶¶ 7–8; Shriver Decl. ¶¶ 7–8.) For example, Perricelli states "I thought that [Defendants' products] were authentic Moroc-

canoil products and that Moroccanoil had changed its product name and its packaging. I thought that these must be the 'new' bottles that Moroccanoil was using." (Perricelli Decl. ¶ 8.) Similarly, Russell states "I believed at first that [Defendants' products] were merely different bottles and packaging that Moroccanoil was using. The words 'Moroccan Gold' Oil Treatment and 'Moroccan Miracle Oil' Treatment on the bottles confused me since they were so similar to Moroccanoil." (Russell Decl. ¶¶ 7–8.)

Thus, this factor weighs in favor of finding likely confusion. However, since Plaintiff has only presented evidence of a small number of instances of confusion, the Court gives this factor little weight.

### e. Marketing channels used

■ "Convergent marketing channels increase the likelihood of confusion." *Official Airline Guides, Inc. v. Goss,* 6 F.3d 1385, 1394 (9th Cir.1993).

Here, Plaintiff has presented sufficient evidence that it will likely succeed in establishing a convergence of Defendants' and Plaintiff's marketing channels. Specifically, Plaintiff has shown that it markets "Moroccanoil Oil Treatment" as a "salon only" product that is sold to salons, stylists, and their patrons. (Tal Decl. ¶ 19.) This business model uses the salesmanship of salon owners and stylists to recommend and sell hair care products to their customers. Plaintiff has also shown that Defendants use this same "salon only" marketing channel. (Tal Decl. ¶ 19; Helser Decl. ¶¶ 5–9.) In fact, Plaintiff points out that the convergence of their marketing channels is actually evidenced on both parties' products by the words "sold exclusively by professional salons," which appears on the products' back label. (Tal Decl. Exs. 1, 2.)

Thus, this factor weighs in favor of finding likely confusion.

### f. Degree of care customers are likely to exercise in purchasing the parties' goods

■ "In analyzing the degree of care that a consumer might exercise in purchasing the parties' goods, the question is whether a "reasonably prudent consumer" would take the time to distinguish between the two product lines." *Surfvivor Media*, 406 F.3d at 634 (internal citation omitted). Courts have found that the ordinary purchaser presumably takes more care in purchasing "expensive" items that she buys infrequently, than in buying everyday, relatively inexpensive items. *See Sleekcraft*, 599 F.2d at 353. Moreover, courts have recognized that purchasers of fragrances and skin care products also exercise a higher degree of care and brand consciousness. *See e.g., Glow Indus., Inc. v. Lopez*, 252 F.Supp.2d 962, 1001 (C.D.Cal.2002); *Clinique Labs., Inc. v. Dep Corp.*, 945 F.Supp. 547, 556 (S.D.N.Y.1996).

Here, Plaintiff has presented sufficient evidence that it will likely succeed in establishing that a reasonably prudent consumer would likely exercise a higher degree of care in purchasing the parties' products. Specifically, Plaintiff has shown that the parties' products are relatively high-priced, and consumers of Plaintiff's product consider it a "high-quality" or "high-end" item. (Keel Decl. ¶ 3; Perricelli Decl. ¶ 3; Russell Decl. ¶ 5.) Moreover, Plaintiff has shown that such hair care products are similar to fragrances and skin care products in that they are personal in nature and are intended to be used on one's body. (Tal Decl. Ex. 25.)

Thus, this factor weighs in favor of finding likely confusion.

### g. Defendant's intent in selecting the mark

■ "When an alleged infringer knowingly adopts a mark similar to another's, courts will presume an intent to deceive the public."[3] *Official Airline Guides*, 6 F.3d at 1394. Registration of a mark on the principal register is constructive notice of the registrant's claim of ownership of the mark. 15 U.S.C. § 1072.

Here, Plaintiff will likely succeed in establishing that Defendants knowingly adopted a similar mark. Specifically, Defendants' product bearing the marks MOROCCAN GOLD and MOROCCAN MIRACLE OIL came to market in the United States in March 2008. (Bogosian Decl. ¶ 16.) Prior to that, Defendants had actual notice of Plaintiff's mark MOROCCANOIL since at least February 2008, when Defendants' application for the mark MOROCCAN OIL was rejected by the USPTO because of Plaintiff's prior pending application. (Curtin Decl. Exs. V, W.) In addition, in May 2008, the USPTO informed Defendants that there was a likelihood of confusion between Defendants' mark MOROCCAN GOLD and Plaintiff's mark MOROCCAN OIL. (Hampton Decl. Ex. 20, 11.) Moreover, Defendants have had constructive notice of Plaintiff's mark since August 5, 2008, the date on which Plaintiff's mark was registered on the principal register of the USPTO. (Tal Decl. Ex. 13.) Nonetheless, Defendants have continued to use their similar marks in commerce. This evidence is sufficient to show that Plaintiff is likely to succeed in

---

3. There is no requirement that the defendant actually intend to confuse customers. *See*

*GoTo.com, Inc.*, 202 F.3d at 1208.

establishing that Defendants knowingly adopted and continued to use a similar mark, such that an intent to deceive would be presumed.[4]

Thus, this factor weighs in favor of finding likely confusion.

### h. Likelihood of expansion into other markets

Plaintiff does not address this factor in its Motion. Defendants, however, state that "Moroccan Gold sells only the one product and has no plans to expand." (Opp. 8; Bogosian Decl. ¶ 16.) Thus, this factor does not weigh in favor of finding likely confusion.

In sum, weighing the factors in light of the evidence as a whole, the Court finds that Plaintiff has presented sufficient evidence showing it will likely succeed on this element of its trademark infringement claim.

Thus, Plaintiff has satisfied the "likelihood of success on the merits" element of the preliminary injunction test.

### B. Likely to Suffer Irreparable Harm in the Absence of Injunctive Relief

■ A plaintiff seeking preliminary relief must "demonstrate that irreparable injury is *likely* in the absence of an injunction."[5] *Winter,* 129 S.Ct. at 375 (emphasis in original). In a trademark infringement action, once the plaintiff has established a likelihood of confusion, the court will ordinarily presume "that the plaintiff will suffer irreparable harm if injunctive relief does not issue." *Rodeo Collection, Ltd. v. West Seventh,* 812 F.2d 1215, 1220 (9th Cir.1987).

■ Here, Plaintiff has established a likelihood of confusion and is thus entitled to a presumption of irreparable harm if an injunction does not issue. Plaintiff has also shown that absent an injunction, it will suffer (1) sales losses due to actual confusion, and (2) permanent weakening of customer recognition of Plaintiff's mark and its association with Plaintiff's goods. (Tal Decl. ¶¶ 14, 20; Helser Decl. ¶¶ 7, 11; Russell Decl. ¶ 6; Perricelli Decl. ¶ 6.)

Thus, Plaintiff has satisfied this element.

### C. Balance of Equities

■ A plaintiff seeking a preliminary injunction must establish that the balance of equities tips in her favor. *Winter,* 129 S.Ct. at 374. When considering the balance of equities, courts will not shy away from issuing preliminary injunctive relief, "where to do so would be to aid a second comer who has sought to trade upon the efforts and good will of the first comer." *Helene Curtis Indus., Inc. v. Church & Dwight Co.,* 560 F.2d 1325, 1333 (7th Cir. 1977) (internal quotations and citations omitted).

■ Here, the Court finds that the balance of equities tips in Plaintiff's favor.

---

4. As to Defendants' contention that they "had a good faith belief that their marks did not infringe any competitor's mark," the evidence demonstrates that the USPTO informed Defendants on May 9, 2008 that there was a "likelihood of confusion" between Defendants' MOROCCAN GOLD mark and Plaintiff's mark MOROCCANOIL. Thus, it is difficult to reconcile Defendants' "good faith belief" with their actual notice of a "likelihood of confusion."

5. The United States Supreme Court's recent decision in *Winter* held that the Ninth Circuit's "possibility" of irreparable injury standard was too lenient. *Winter,* 129 S.Ct. at 375.

Plaintiff has shown that Defendants' product, with its confusingly similar trademark and packaging, is a second comer to the marketplace intentionally trying to trade upon the efforts and goodwill established by Plaintiff. (Tal Decl. Ex. 12; Hampton Decl. Ex. 20.) As discussed in Section IV.A.2.vii. above, Plaintiff has also shown that Defendants' actions in adopting and maintaining a confusingly similar mark were intentional because Defendants had actual and constructive knowledge of the similarity between their marks and Plaintiff's mark. Thus, any injury that Defendants may suffer if preliminarily enjoined may be discounted by the fact that Defendants brought the injury upon themselves by intentionally adopting deceptively similar trademarks and packaging.

Therefore, the balance of equities tips in Plaintiff's favor.

### D. *Public Interest*

Courts also consider whether an injunction is in the public interest. *See Winter*, 129 S.Ct. at 374. In trademark cases, this factor is often addressed in terms of the public's right "not to be deceived or confused." *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 198 (3rd Cir.1990).

 Here, Plaintiff has demonstrated that an injunction in this case is in the public interest. Plaintiff has shown that it has spent considerable time, energy, and money to have the public associate its products with the mark MOROCCA-NOIL. (Tal Decl. ¶¶ 2–3, 7–10.) By using confusingly similar marks, Defendant is depriving consumers of their ability to distinguish among the goods of competing manufacturers. As the public has a right not to be deceived or confused, the public

interest and goals of the Lanham Act favor an injunction in this case.

Thus, this element is met.

## V. *EVIDENTIARY OBJECTIONS*

To the extent the Court has cited evidence to which the parties' object, those objections are overruled.

## VI. *CONCLUSION*

In light of the foregoing, the Court GRANTS Plaintiff's Motion for Preliminary Injunction.

**IT IS SO ORDERED.**